IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON SCUTT,<br><br>          Plaintiff,<br><br>   vs.<br><br>CARBONARO CPAS N MNGMT GRP,<br><br>        Defendant. | CIV. NO. 20-00362 JMS-RT<br><br>ORDER: 1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS; 2) ALLOWING CLAIM OF ADVERSE EMPLOYMENT ACTION UNDER TITLE VII AND CLAIM UNDER THE EQUAL PAY ACT TO PROCEED, BUT DISMISSING ALL OTHER CLAIMS WITH LEAVE TO AMEND; AND 3) REFERRING CASE TO THE PRO BONO COORDINATOR |

**ORDER: (1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS; (2) ALLOWING CLAIM OF ADVERSE EMPLOYMENT ACTION UNDER TITLE VII AND CLAIM UNDER THE EQUAL PAY ACT TO PROCEED, BUT DISMISSING ALL OTHER CLAIMS WITH LEAVE TO AMEND; AND (3) REFERRING CASE TO THE PRO BONO COORDINATOR**

## I. INTRODUCTION

On August 23, 2020, pro se Plaintiff Jason Scutt ("Plaintiff") filed a Complaint against Defendant "Carbonaro CPAs n Mgmt Grp" ("Defendant"), alleging: 1) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"); 2) employment discrimination and retaliation in

violation of Title VII of the Civil Rights Act of 1964; 3) a violation of the Equal Pay Act; 4) a violation of 18 U.S.C. § 2255; and 5) a violation of Hawaii's Whistleblowers' Protection Act.  *See* ECF No. 1-1.  Plaintiff also filed an Application to proceed in forma pauperis ("IFP Application") and a Request for Appointment of Counsel.  ECF Nos. 2-3.  Based on the following, the court GRANTS the IFP Application, allows the claim of adverse employment actions under Title VII and the claim under the Equal Pay Act to proceed, DISMISSES all other claims with leave to amend, and REFERS the case to the pro bono coordinator to attempt to locate counsel willing to represent Plaintiff for the limited purpose of filing a First Amended Complaint and with respect to pretrial motions that may be filed.

## II.  IFP APPLICATION

Plaintiff's IFP Application indicates that she earns about $3,000 annually from her start-up certified public accountant ("CPA") firm and that she received about $4,000 from her family in 2019.[1]  ECF No. 2 at PageID #30. Plaintiff's assets include about $2,500 in a bank account and ownership of the

---

[1] Plaintiff is a transgender female.  *See* Complaint, ECF No. 1-1 at PageID #6; *see also* Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination attached to Complaint, ECF No. 1-5 at PageID #24-25.

start-up CPA firm. *Id.* at PageID #30-31. The IFP Application further indicates that Plaintiff has no dependents and her monthly living expenses include $1,000 for rent, $1,000 for transportation, $2,000 in personal loan/credit card payments, $400 for utilities, and $2,000 for groceries and medical costs. *Id.* at PageID #31. Plaintiff owes $175,000 for student loans and $25,000 for personal loans/credit card accounts. *Id.* Plaintiff has made the required showing under 28 U.S.C. § 1915(a) to proceed in forma pauperis (i.e., without prepayment of fees); therefore, the court GRANTS Plaintiff's IFP Application.

## III.  STANDARD OF REVIEW

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and order the dismissal of any complaint that is "frivolous or malicious; . . . fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to dismiss sua sponte an in forma pauperis complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

To state a claim, a pleading must contain a "short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering whether a complaint fails to state a claim, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

A district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678

(citations and internal quotation signals omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citations, internal quotation signals, and alterations omitted).

Plaintiff is appearing pro se; consequently, the court liberally construes the Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citations and internal quotation signals omitted); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

## IV.  <u>BACKGROUND</u>[2]

Plaintiff alleges that she is "transgender / LGBTQIA+" and that she has an unidentified disability. ECF No. 1-1 at PageID #6.

---

[2] For purposes of screening, facts alleged in the Complaint are accepted as true and construed in the light most favorable to Plaintiff. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Plaintiff worked for Defendant as a CPA.  She says Defendant paid her less than other employees with the same qualifications who had different religious beliefs or a different sexual orientation.  *Id.*  For example, Plaintiff claims she was not promoted to manager despite being more qualified than other employees who are Christian.  *Id.*  She also alleges that Defendant permitted a Christian employee to work from home when she was not allowed to work from home.  *Id.* at PageID #8.

Plaintiff alleges that Defendant's owners and management are pastors at various religious organizations, including organizations that Defendant audits.  *Id.* at PageID #10.  She says she was invited to religious services, received religious material, and felt pressure to "adhere to the Christian culture of the Firm."  *Id.* at PageID #7.  She says that Defendant displayed Christian décor during the holiday season and that she had to participate in "mandatory religious activities that project[ed] hateful sentiments toward LGBTQ employees (i.e. 'sinners')."  *Id.* at PageID #10.  And she says that she was expected to attend the office Christmas party, which was the only time bonus checks were distributed.  *Id.* at PageID #8.

Plaintiff further alleges that she had to endure prayer at work and that she had to pray with Defendant's owners in exchange for medical coverage for a March 2018 surgery.  *Id.*  She complains of work emails referring to prayer,

6

attaching to the Complaint a "typical" email chain with John Carbonaro, who she identifies as Defendant's owner. *Id.* at PageID #7; ECF No. 1-3. Plaintiff notes that Carbonaro allowed her to live with him when she needed emergency shelter and food assistance. *Id.* at PageID #7, 10. In the April 18, 2019 email attached to the Complaint, Plaintiff tells Carbonaro and others that she is having surgery the following week. Carbonaro responds, "Thanks for the update. I pray that God protects and heals you and that all goes well." ECF No. 1-1 at PageID #7; ECF No. 1-3 at PageID #16.

Plaintiff also complains of "top Firm officials illegally entering Plaintiff[']s hospital room after she became injured to 'pray'" and to get access to her private medical information. *Id.* at PageID #7, 10.

Plaintiff says she was subjected to "inappropriate neck massages," but provides no other detail such as who performed the massages, who received the massages, and when and under what circumstances they were performed. ECF No. 1-1 at PageID #7. The Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination attached to the Complaint indicates that Carbonaro "attempted" to give Plaintiff neck massages, which implies that she did not actually receive such massages and instead perceived a hostile work environment based on other people getting massages. *See* ECF No. 1-5 at PageID #24.

Plaintiff says she received "creepy" messages from Defendant, such as "meet at your home" and "thinking of you often."  ECF No. 1-1 at PageID #7.  Plaintiff attaches to the Complaint the letter from which these statements were taken.  A fair reading of the letter shows that Plaintiff's allegation about the letter being "creepy" are taken out of context.  In the letter, Carbonaro writes, "I hope you are getting better.  We have been thinking of you often."  ECF No. 1-4 at PageID #17.  While part of the letter appears to be missing, the gist of it is that Plaintiff had been out of work for a period because of some kind of medical issue and that Defendant wanted to discuss the prospect of her returning to work.  Carbonaro then writes, "[w]e want to set up a meeting as soon as possible," and suggests that they "meet at our office or your home."  *Id.*

Plaintiff complains of being "harassed at work, via telephone, in passing (store, public sermons, etc.) and at her home," but does not allege that Defendant is responsible for these actions.  *See* ECF No. 1-1 at PageID #5.  She similarly complains of phone calls, texts, junk mail, missing mail, dog feces left under her mailbox, and complaints made to her landlord and other administrative officials, but does not allege that Defendant committed any of these acts.  *Id.* at PageID #7.

Plaintiff alleges that Defendant retaliated against her for her EEOC

charge of discrimination "and other whistleblower complaints regarding potential fraud." *Id.* at PageID #5. She says that, because of Defendant's influence, she had fewer opportunities for reemployment. *Id.* at PageID #6.

Plaintiff says that Defendant terminated her because she was unable to work and supposedly lacked detailed knowledge about why and for how long she would not be working. However, Plaintiff says Defendant obtained health information when visiting her in the hospital that should have indicated why she was not able to work. *Id.* at PageID #7.

Plaintiff alleges that Defendants falsely accused her of stealing a laptop in its response to the EEOC's Charge of Discrimination. Plaintiff says that a manager had given her permission to keep the broken computer so that she could recover her family photos and tax documents. *See id.* at PageID #11-12; *see also* ECF No. 1-4 at PageID #19 (apparent response from Defendant to EEOC stating that Plaintiff refused to return the company computer).

## V. **DISCUSSION**

Plaintiff's Complaint asserts the following claims: 1) disability discrimination and retaliation in violation of the ADA; 2) employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964; 3) a violation of the Equal Pay Act; 4) a violation of 18 U.S.C. § 2255; and

5) a violation of Hawaii's Whistleblower's Protection Act.  *See* ECF No. 1-1.  The court screens each of those claims below, allowing only the claims of adverse employment actions under Title VII and the claim under the Equal Pay Act to proceed.  All other claims are dismissed without prejudice.

## A.      Americans with Disabilities Act

### 1.      *Disability Discrimination—Adverse Employment Action*

Title I of the ADA, 42 U.S.C. §§ 12111-17, prohibits disability discrimination in employment.  Specifically, 42 U.S.C. § 12112(a), prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  A prima facie case of disability discrimination under Title I of the ADA requires a Plaintiff to establish that: 1) she is "disabled" within the meaning of the statute; 2) she is a "qualified individual" (that is, she is able to perform the essential functions of her job, with or without reasonable accommodations); and 3) she suffered an adverse employment action "because of" her disability.  *See, e.g.*, *Hutton v. Elf Atochem N. Am., Inc.*,

///

///

10

273 F.3d 884, 891 (9th Cir.2001).  As discussed in more detail below, Plaintiff

fails to allege a plausible Title I ADA discrimination claim. [3]

The court concludes that Plaintiff fails to allege a "disability" under

the ADA, which defines the term as a "physical or mental impairment that

substantially limits one or more major life activities" or as "being regarded as

having such an impairment."  42 U.S.C. § 12102(1)(A) and (C).  "[M]ajor life

activities include, but are not limited to, caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating,

and working."  42 U.S.C. § 12102(2)(A).  Congress specifically excluded

homosexuality and bisexuality from the term "disability."  42 U.S.C. § 12211(a).

Congress also excluded (in outmoded language) "transvestism, transsexualism,

pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from

---

[3] Although the Complaint asserts a violation of Title III of the ADA, 42 U.S.C.
§ 12182(a) (prohibiting disability discrimination in public accommodations), Plaintiff's
employment discrimination claims must be asserted under Title I of the ADA.  *See Menkowitz v.
Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 118-19 (3d Cir. 1998) ("Congress sought to regulate
disability discrimination in the area of employment exclusively through Title I, notwithstanding
the broad language of Title III.  As the Senate report makes clear, 'Title III is not intended to
govern any terms or conditions of employment by providers of public accommodations or
potential places of employment; employment practices are governed by [T]itle I of this
legislation.' S. Rep. No. 101-116, at 58 (1989).").  The court therefore construes Plaintiff's claim
as being asserted under Title I of the ADA.

physical impairments, or other sexual behavior disorders." 42 U.S.C. §

12211(b)(1).

To the extent Plaintiff bases her ADA claim on some unidentified

disability, she fails to state a viable claim for discrimination under the ADA, as she

fails to allege facts supporting a claim of discrimination based on the unidentified

disability.

To the extent Plaintiff is arguing that she is or was regarded as being a

homosexual, *see* ECF No. 1-1 at PageID #9, she does not allege a viable

"disability" for purposes of the ADA, as homosexuality is excluded from the

definition of a "disability" under the ADA. *See* 42 U.S.C. § 12211(a). And

Plaintiff does not allege that Defendant perceived her as having a condition that

would qualify as a disability for purposes of the ADA. *See Blatt v. Cabela's*

*Retail, Inc.*, 2017 WL 2178123, at *3 n.3 (E.D. Pa. May 18, 2017) (recognizing

that, although homosexuality is not a disability for purposes of the ADA, a

homosexual person might nevertheless have a condition that could meet the ADA's

definition of disability).

To the extent Plaintiff alleges discrimination related to her

transgender identity, she fails to allege sufficient facts to establish a disability for

purposes of the ADA. Gender identity is not a disability. But at least one court

has recognized the possibility that gender dysphoria, a condition stemming from the mismatch between a person's gender identity and physical or assigned sex,[4] may "result[] from physical impairments" such that it is not categorically excluded under § 12211(b)(1). *Doe v. Mass. Dep't of Corr.*, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018) (holding that "the ADA's exclusion applies only to 'gender identity disorders *not resulting* from physical impairments,' and [the plaintiff] has raised a dispute of fact that her [gender dysphoria] may result from physical causes" by pointing to studies "demonstrating that [gender dysphoria] diagnoses have a physical etiology, namely hormonal and genetic drivers contributing to the in utero development of dysphoria") (internal citation omitted).  But here, Plaintiff only alleges that her gender identity is transgender, not that she suffers from gender dysphoria or any other condition, let alone *because of* physical

---

[4] Gender dysphoria is a recognized disorder in the DSM-V that leads those suffering from the condition to experience "significant distress and/or problems functioning associated with th[e] conflict between the way they feel and think of themselves (referred to as experienced or expressed gender) and their physical or assigned gender."  *See* Ranna Parekh, *What Is Gender Dysphoria?*, American Psychiatric Association (Feb. 2016), https://www.psychiatry.org/patients-families/gender-dysphoria/what-is-gender-dysphoria; *see also Gender Dysphoria*, Mayo Clinic (Dec. 6, 2019), https://www.mayoclinic.org/diseases-conditions/gender-dysphoria/symptoms-causes/syc-20475255 ("Transgender and gender-nonconforming people might experience gender dysphoria at some point in their lives.  But not everyone is affected.  Some transgender and gender-nonconforming people feel at ease with their bodies, either with or without medical intervention.").

impairments.  Accordingly, Plaintiff fails to allege a plausible claim under the ADA for disability discrimination.[5]

The court therefore dismisses Plaintiff's claim of adverse employment actions under Title I the ADA, but grants leave to amend the claim if Plaintiff has a factual basis for asserting that she suffers from a gender identity disorder based on physical impairments such that it is not excluded by § 12211(b)(1).

### 2.    *Disability Discrimination—Hostile Work Environment*

Plaintiff next asserts a hostile work environment claim in violation of Title I of the ADA.  It is not clear whether the Ninth Circuit recognizes such a claim.  *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) (stating that the Ninth Circuit has not yet held that a hostile work environment claim under the ADA exists); *but see Denning v. Cty. of Washoe*, 799 F. App'x 547 (9th Cir. 2020) (assuming that a hostile work environment claim exists for purposes of the appeal) (unpublished); *Mulligan v. Lipnic*, 734 F. App'x 397, 400 (9th Cir. 2018) (same) (unpublished).  However, even assuming a hostile work environment claim is actionable under Title I of the ADA, Plaintiff fails to allege a viable claim, as her

---

[5] To the extent that Plaintiff argues Defendant *perceived* her transgender status as a disability and discriminated against her on that basis, she has also failed allege facts sufficient to state a plausible claim.  Whether the ADA would support such a claim is not clear.  Because such a theory was not adequately alleged, the court does not address it here.

Complaint lacks factual assertions establishing the severity and pervasiveness of the disability discrimination.

Plaintiff is given leave to file a First Amended Complaint that sets forth factual allegations demonstrating a hostile work environment in violation of Title I of the ADA.

### 3.    *Disability Discrimination—Retaliation*

Plaintiff also asserts a disability discrimination claim based on retaliation**.**  The ADA's anti-retaliation provision provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  "To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two."  *Pardi v. Kaiser Found. Hosps*., 389 F.3d 840, 849 (9th Cir. 2004) (citing *Brown*, 336 F.3d at 1186-87).  Pursuing one's rights under the ADA is a protected activity.  *Id.* at 850.  An "adverse employment action" for purposes of an ADA retaliation claim is any action that is "'reasonably likely to deter employees from engaging in protected activity.'"  *Id.* (quoting *Ray*

15

*v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)).  The court dismisses Plaintiff's retaliation claim under the ADA for failure to exhaust administrative remedies, but grants leave to amend the claim.

Plaintiff's Complaint alleges that Defendant retaliated against her for the exercise of her EEOC rights.  *See* ECF No. 1-1 at PageID #5.  Plaintiff's EEOC Charge of Discrimination checked the box for disability discrimination and can therefore be considered an exercise of rights under the ADA.  *See* ECF No. 1-5 at PageID #24.  The Charge of Discrimination was signed by Plaintiff on November 22, 2019, and complains of her termination.  *Id.*  Accordingly, for Defendant to have retaliated against Plaintiff for her exercise of ADA rights via the EEOC Charge of Discrimination, any such retaliation had to relate to post-termination events that occurred after the November 2019 Charge of Discrimination.  Liberally construing the Complaint, Plaintiff's ADA retaliation claim is therefore based on Defendant using its "significant influence" to lessen her reemployment opportunities.  *See* ECF No. 1-1 at PageID #6.

Title I of the ADA incorporates the exhaustion requirement of Title VII and thus requires a plaintiff to file a charge with the EEOC before asserting a claim in court.  *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5). This exhaustion requirement is a claims processing rule, rather than a jurisdictional

prerequisite. *See Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019).

Because Plaintiff attaches an EEOC Charge of Discrimination to her Complaint,

*see* ECF No. 1-5 at PageID #24-25, a reasonable inference for purposes of this

screening order is that she did not file any subsequent EEOC Charge of

Discrimination complaining of retaliation for her having filed an EEOC charge.

But this does not necessarily mean Plaintiff failed to exhaust her administrative

remedies with respect to the retaliation claim premised on the earlier EEOC

charge.

The Ninth Circuit has stated that "substantial compliance" with the

exhaustion requirement is the prerequisite and the scope of exhausted claims

includes matters that "are like or reasonably related to the allegations made before

the EEOC, as well as charges that are within the scope of an EEOC investigation

that reasonably could be expected to grow out of the allegations." *Leong v. Potter*,

347 F.3d 1117, 1122 (9th Cir. 2003) (quotation marks and citation omitted).

> In determining whether a plaintiff has exhausted
> allegations that she did not specify in her administrative
> charge, it is appropriate to consider such factors as the
> alleged basis of the discrimination, dates of
> discriminatory acts specified within the charge,
> perpetrators of discrimination named in the charge, and
> any locations at which discrimination is alleged to have
> occurred.  In addition, the court should consider
> plaintiff's civil claims to be reasonably related to
> allegations in the charge to the extent that those claims

17

> are consistent with the plaintiff's original theory of the
> case.

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).  Language in an

EEOC charge is to be construed with "utmost liberality."  *Id.*

 The court must therefore examine whether Plaintiff's ADA retaliation

claim of using Defendant's "significant influence" to lessen Plaintiff's

reemployment opportunities in retaliation for her EEOC charge is "like or

reasonably related to the allegations made before the EEOC" or "within the scope

of an EEOC investigation that reasonably could be expected to grow out of the

allegations."  *Leong*, 347 F.3d at 1122.  The court concludes that it is not.

 The EEOC Charge of Discrimination complained of discrimination on

the basis of Plaintiff's sex, religion, and disability.  Specifically, it complains of

workplace harassment, failure to provide reasonable accommodations, and,

ultimately, her termination.  In comparison, Plaintiff's allegation of Defendant

taking post-termination actions that lessened her ability to find work with other

employers covers an entirely different time frame.  More importantly, Plaintiff's

employment relationship with Defendant ended when she was terminated.

Accordingly, Defendant's post-termination conduct would not have been within

the scope of any EEOC investigation that could be expected to grow out of the

charge. *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 645 (9th Cir. 2003), is instructive on this point.

In *Vasquez,* the plaintiff asserted a retaliation claim premised on a threat to transfer him and on not receiving overtime duty or bilingual pay in response to his filing of an EEOC charge. The Ninth Circuit concluded that a reasonable EEOC investigation would not have encompassed those alleged retaliatory acts because the EEOC charge involved a different person and the retaliatory acts did not occur during the time frame of the events alleged in the EEOC charge. *Id.* Here, although the same actor (Carbonaro) may have been accused of discrimination in the EEOC charge and in the Complaint's allegations with respect to alleged ADA retaliation, the EEOC charge involved an entirely different time frame. The EEOC charge only complained of discrimination from the time Plaintiff began employment in July 2016 through her termination on May 1, 2019. A reasonable EEOC investigation would not have included post-termination conduct, as such an investigation would not likely have examined Defendant's conduct after the employment relationship ended

Thus, because Plaintiff's ADA-based retaliation claim was not exhausted, it is dismissed. Nevertheless, Plaintiff is given leave to amend that claim to address whether it could have been exhausted as analyzed above.

19

### B.  Title VII

#### 1.  *Title VII Discrimination—Disparate Treatment*

Plaintiff alleges a potentially viable claim of disparate treatment in violation of Title VII, which makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a)(1).  To allege a prima facie case of disparate treatment discrimination under Title VII, a plaintiff must allege that "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *Davis*, 520 F.3d at 1089.  "[A]n adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Id.* (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)).  Plaintiff alleges these elements.

First, Plaintiff alleges that she belongs to two protected classes for purposes of Title VII.  She alleges discrimination based on religion, *see* ECF No. 1-1 at PageID #7-10, which is expressly prohibited by Title VII.  *See* 42 U.S.C.

20

§ 2000e-2(a)(1).  She also alleges discrimination based on her being transgender (and possibly being homosexual or being perceived as homosexual).  *See* ECF No. 1-1 at PageID # 6, 9-10.  The Supreme Court recently ruled that Title VII's prohibition of discrimination based on sex covers discrimination against a homosexual or transgender person, as "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."  *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1741 (2020).

Second, the Complaint alleges that Plaintiff was qualified for her position and for the position of a manager.  *See* ECF No. 1-1 at  PageID #6.

Third and fourth, the Complaint alleges adverse employment actions would not have occurred but for her gender identity and religious beliefs.  As noted above, an "adverse employment action" is one that "materially affects the compensation, terms, conditions, or privileges of employment."  *Davis*, 520 F.3d at 1089.  Plaintiff alleges that she did not receive equal or fair pay solely because of her transgender status.  *See* ECF No. 1-1 at PageID #5-6.  Plaintiff also alleges that she was not promoted to manager and was later terminated because of her transgender status.  *See id.* at PageID #6-7.  With respect to religious beliefs, she says that the only way to obtain the yearly bonus check was to attend a Christmas party, which she apparently perceives as having a  religious basis.  *Id.* at PageID

#8.  The Complaint also alleges that Christian employees were paid more and had

"higher titles."  *Id.* at PageID #6.  And, the Complaint alleges that Plaintiff was

terminated after a failed conversion.  *Id.* at PageID #9.  The implication of this

allegation is that employees who held religious beliefs different than Plaintiff's

were not terminated.  Together, these allegations are sufficient to assert a plausible

disparate treatment claim under Title VII.

### 2.   *Title VII Discrimination—Hostile Work Environment*

Plaintiff next asserts a hostile work environment claim in violation of

Title VII, which, in relevant part, prohibits employer discrimination on the basis of

sex and religion regarding "compensation, terms, conditions, or privileges of

employment."  42 U.S.C. § 2000e-2(a)(1).  For such a claim to be actionable, a

plaintiff need not demonstrate that an employer took an adverse employment

action.  Instead, employers are liable when an employee proves "(1) that [s]he was

subjected to verbal or physical conduct of a harassing nature, (2) that this conduct

was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working

environment."  *Arizona ex rel. Horne v. Geo Grp., Inc*., 816 F.3d 1189, 1206 (9th

Cir. 2016) (quotation marks and citation omitted).  The "'environment must be

both objectively and subjectively offensive, one that a reasonable person would

22

find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).  "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile."  *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007).  In determining whether an environment is sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, whether it is simply an offensive utterance, and whether it unreasonably interferes with an employee's work performance.  *See Faragher*, 524 U.S. at 787.  Simple teasing, offhand comments, and isolated incidents are insufficient to change the terms and conditions of a person's employment.  *Id.*

Plaintiff fails to allege facts demonstrating a hostile work environment in violation of Title VII.  In particular, Plaintiff's Complaint fails to allege discriminatory conduct that is sufficiently severe or pervasive to have changed the terms and conditions of her employment.  To the extent the Complaint alleges harassment but fails to allege that Defendant committed or is somehow responsible for the harassment, it fails to allege a viable hostile work environment claim.  For

example, the Complaint alleges that Plaintiff suffered harassment "via telephone, in passing (store, public sermons, etc.)[,] and at her home," but does not identify who allegedly committed the harassment.  *See* ECF No. 1-1 at PageID #5. Similarly, Plaintiff's references to general harassment, including phone calls, texts, emails, missing mail, dog feces left under her mailbox, complaints to her landlord and other officials, and other negative comments and messages are insufficient to support an employment discrimination claim when there is no allegation that Defendant was responsible for the acts.  *See id.* at PageID #7-8.

Plaintiff alleges that she "received invitations to church, religious material, prayers, inappropriate touching, and other pressure to adhere to the Christian culture of the Firm."  *Id.* at PageID #7.  She alleges that "[p]rayer, inappropriate neck massages, jokes and comments, and other harassment also took place in the workplace."  *Id.*  But the Complaint lacks factual allegations identifying the severity and pervasiveness of the conduct.  For example, although the Complaint references neck massages, it does not allege how often they occurred, who performed them, or whether Plaintiff or another employee received them.  In fact, the EEOC Charge of Discrimination attached to the Complaint indicates that Carbonaro "attempted" to give Plaintiff neck massages, which implies that she did not actually receive such massages and instead perceived a

hostile work environment based on other people getting massages. *See* ECF No. 1-5 at PageID #24. Moreover, there is no allegation that such massages were unwanted. At best, Plaintiff says that she had to pray with Defendant's owners to receive medical coverage for a surgery in March 2018 and that Defendant displayed Christian décor during the holidays. *See id.* at PageID #8. But Plaintiff fails to allege facts establishing that the conduct was sufficiently severe or pervasive that it altered the conditions of her employment and created an abusive working environment.

Plaintiff says that an email she received from Carbonaro that is attached to the Complaint as Exhibit B was "typical" of work emails. *Id.* That email was a response to Plaintiff's notification that she was going to have surgery the following week. It stated, "I pray that God protects and heals you and that all goes well." ECF No. 1-3 at PageID #16. Plaintiff also alleges that she received "creepy" messages, such as the letter attached to the Complaint as Exhibit C, which says, "meet at your home" and "thinking of you often." ECF No. 1-1 at PageID #7. However, those phrases appear to be taken out of context, as the letter states, "I hope you are getting better. We have been thinking of you often." ECF No. 1-4 at PageID #17. The letter then notes that Defendant has been without Plaintiff at work and appears to state that Defendant has not been told why or when

25

Plaintiff would be returning to work.  It asks to set up a meeting with Plaintiff, either "at our office or your home."  *Id.*  This correspondence cannot be said to have involved discriminatory conduct so severe or pervasive that it altered the conditions of Plaintiff's employment and created an abusive working environment.

Plaintiff complains of Defendant "illegally entering [her] hospital room after she became injured to 'pray'" and that there were prayers at work and an expectation that she would attend the office Christmas party.  ECF No. 1-1 at PageID #7-8, 10.  Again, these allegations are insufficient to show an abusive working environment that changed the terms and conditions of her employment.  Even taking all of Defendant's actions together, they do not demonstrate sufficiently severe or pervasive conduct to support a hostile work environment claim.[6]

Plaintiff's Title VII hostile work environment claim is dismissed.  However, Plaintiff is given leave to amend the claim to attempt to cure its deficiencies.

///

///

---

[6] The court notes that alleged post-termination statements made by Defendants to the EEOC that were allegedly false cannot be part of a hostile working environment.  See id. at PageID #8, 11.

### 3.    *Title VII Discrimination—Retaliation*

Title VII prohibits employers from retaliating against employees for

their exercise of rights under Title VII, stating:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his employees or
> applicants for employment, for an employment agency,
> or joint labor-management committee controlling
> apprenticeship or other training or retraining, including
> on-the-job training programs, to discriminate against any
> individual, or for a labor organization to discriminate
> against any member thereof or applicant for membership,
> because he has opposed any practice made an unlawful
> employment practice by this subchapter, or because he
> has made a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or hearing
> under this subchapter.

42 U.S.C.A. § 2000e-3(a).  To allege a prima facie retaliation case under Title VII,

a plaintiff must allege 1) that she engaged in a protected activity, 2) that her

employer subjected her to an adverse employment action, and 3) that the protected

activity and the employer's action are causally linked.  *See Hardage v. CBS*

*Broad., Inc.*, 427 F.3d 1177, 1188 (9th Cir. 2005); *Ray v. Henderson*, 217 F.3d

1234,  1240 (9th Cir. 2000).

In relevant part, Plaintiff alleges that Defendant retaliated against her

for filing the EEOC complaint.  *See* ECF No. 1-1 at PageID #5.  For the reasons

discussed above with respect to Plaintiff's retaliation claim under the ADA, the

27

court dismisses her retaliation claim under Title VII.  Under the circumstances presented here, the court concludes that Plaintiff did not administratively exhaust that claim.  Plaintiff is given leave to file an amended retaliation claim under Title VII to attempt to demonstrate that she exhausted her administrative remedies with respect to such a claim.

## C.      Equal Pay Act

Plaintiff's Complaint alleges a violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), which prohibits employers from paying employees differently on the basis of their sex.  The Act states:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That[sic] an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

Plaintiff alleges that she was paid less than a person with the same qualifications but with a different sexual orientation or gender identity. *See* ECF No. 1-1 at PageID #6.  Given the Supreme Court's recent decision in the Title VII context that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex," *Bostock*, 140 S. Ct. at 1741, Plaintiff has sufficiently alleged that she has received unequal pay because of her sex.  Accordingly, her Equal Pay Act claim may proceed.

**D.     18 U.S.C. § 2255**

Plaintiff fails to allege a viable claim under 18 U.S.C. § 2255.  In relevant part, the statute states:

> Any person who, while a minor, was a victim of a violation of [various sections] of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.  The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2255(a).  Plaintiff's Complaint does not allege that she was a victim of any of the enumerated crimes while she was a minor.  Accordingly, the court

29

dismisses her claim under § 2255, but gives her leave to file an amended claim if the facts could support such a claim.

## E.     Hawaii's Whistleblower's Protection Act

Plaintiff alleges that Defendant retaliated against her for her whistleblowing activity.  The court deems this to be a claim under Hawaii's Whistleblowers' Protection Act, which protects employees who report potentially illegal conduct of their employers.  The Whistleblowers' Protection Act provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
>> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
>>
>> (B) A contract executed by the State, a political subdivision of the State, or the United States
>
> unless the employee knows that the report is false; or

///

///

> (2) An employee is requested by a public body to
> participate in an investigation, hearing, or inquiry held by
> that public body, or a court action.

Haw. Rev. Stat. § 378-62.

Plaintiff's Whistleblowers' Protection Act claim is dismissed because it is not sufficiently supported by factual allegations. Plaintiff merely alleges that Defendant harassed her after she complained of "potential fraud . . . by Carbonaro and 'Christian' [c]lients." ECF No. 1-1 at PageID #5. But the Complaint does not indicate when and to whom Plaintiff complained of the potential fraud, what the basis of the alleged fraud was, or identify the type of harassment that allegedly resulted because of the complaint of fraud. It is a general allegation of harm that is devoid of factual support connecting a protected activity to improper retaliation. Plaintiff is given leave to file an amended Whistleblowers' Protection Act claim that is supported by factual allegations.

## VI.  **<u>PLAINTIFF MAY FILE A FIRST AMENDED COMPLAINT</u>**

Plaintiff is given leave to file a First Amended Complaint no later than **November 23, 2020**. (The court sets this extended deadline to allow for the possibility of counsel filing a First Amended Complaint on Plaintiff's behalf.) If an amended complaint is not filed by November 23, 2020, the case will proceed with the claims not dismissed by this Order.

Any amended complaint must state that it is the "First Amended Complaint" and may not incorporate any part of the original Complaint by reference. This means that specific allegations from the original Complaint must be rewritten in their entirety. Plaintiff may include only one claim per count. Any claim that is not realleged in the First Amended Complaint will be deemed voluntarily dismissed and considered waived. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but that claims that are voluntarily dismissed are considered waived if they are not repled).

## VII.  REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff has requested court-appointed counsel. Generally, "a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). However, under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." "The decision to appoint such counsel is within the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (quotation marks and citation omitted). Determining whether exceptional circumstances exist requires this court to evaluate "the likelihood of the plaintiff's success on the merits and an evaluation of the

plaintiff's ability to articulate his claims in light of the complexity of the legal issues involved." *Id.* (quotation marks and citations omitted).

Although the court cannot determine the likelihood of Plaintiff's success on the merits of the claims that may be viable, the court notes that determining whether Plaintiff has a disability for purposes of the ADA could possibly involve a complex issue—whether Plaintiff can be said to have a gender identity disorder "resulting from physical impairments." 42 U.S.C. § 12211(b)(1). The court will therefore endeavor to see whether any counsel from the court's pro bono panel is willing to represent Plaintiff for the limited capacity of filing a First Amended Complaint and litigating pretrial motions. Accordingly, the court will REFER the case to the pro bono coordinator for such a purpose.

## VIII.  CONCLUSION

Based on the foregoing, the IFP Application is GRANTED; the Complaint is DISMISSED IN PART pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim; and the court REFERS the case to the pro bono coordinator to determine whether any counsel from the court's pro bono panel is willing to represent Plaintiff for the limited capacity of filing a First Amended Complaint and litigating pretrial motions. Plaintiff may proceed with her claims based on adverse employment actions in violation Title VII and based on the Equal Pay Act. All

other claims are DISMISSED WITHOUT PREJUDICE and Plaintiff is

GRANTED leave to file a First Amended Complaint to attempt to cure the

deficiencies identified in this order no later than **November 23, 2020**.  If an

amended complaint is not filed by November 23, 2020, the case will proceed with

the claims not dismissed by this Order.

Rather than immediately filing a First Amended Complaint pro se,

Plaintiff must first give the pro bono coordinator and pro bono liaison time to see

whether any counsel is willing to represent Plaintiff.  If no pro bono counsel is

found, the court will alert Plaintiff and provide further direction as to how she

should proceed.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 2, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scutt v. Carbonaro CPAs n Mngmt. Grp.*, Civ. No. 20-00362 JMS-RT, Order: 1) Granting
Application to Proceed In Forma Pauperis; 2) Allowing Claim of Adverse Employment Action
Under Title VII and Claim Under the Equal Pay Act to Proceed, but Dismissing All Other
Claims with Leave to Amend; and 3) Referring Case to the Pro Bono Coordinator